The Honorable Thomas Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| JUDITH MOON, an individual,<br><br>     Plaintiff,<br><br>v.<br><br>GMAC MORTGAGE CORPORATION, d/b/a DITECH.COM, a Pennsylvania corporation; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC, a.k.a. MERS, a Delaware corporation; TRANS NATION TITLE COMPANY, a corporation; FIRST AMERICAN TITLE INSURANCE COMPANY, a corporation; and EXECUTIVE TRUSTEE SERVICES, LLC, a limited liability company,<br><br>     Defendants. | No.  08-cv-969-TSZ<br><br>JUDITH MOON'S **AMENDED** COMPLAINT FOR DAMAGES AND ENJOIN FORECLOSURE:<br><br>(1) BREACH OF FIDUCIARY DUTY;<br>(2) VIOLATION(S) OF REAL ESTATE SETTLEMENT PROCEDURES ACT;<br>(3) VIOLATION(S) OF DEED OF TRUST ACT;<br>(4) VIOLATION OF CONSUMER PROTECTION ACT;<br>(5) VIOLATION(S) OF TRUTH IN LENDING ACT;<br>(6) INTENTIONAL  INFLICTION OF EMOTIONAL DISTRESS;<br>(7) NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;<br>(8) MISREPRESENTATION;<br>(9) UNCONSCIONABILITY;<br>(10)DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES |

COMES NOW, the Plaintiff, Judith Moon, and alleges as follows:

**AMENDED** COMPLAINT - 1



720 Olive Way, Suite 1000, Seattle, WA 98101-2509
p: 206.624.0123  f: 206.624.8598  www.resolvelegal.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47

## I.    NATURE OF ACTION

Plaintiff brings this action for damages stemming from the defendants' following actions: Defendant GMAC Mortgage Corporation's, d/b/a Ditech.com's Breach of Fiduciary or Quasi-Fiduciary duty to the plaintiff, fraud, violation of the Real Estate Settlement Procedures Act ("RESPA"), violation of the Truth in Lending Act ("TILA"), violations of Washington State's Consumer Protection Act, and intentional infliction of emotional distress upon the plaintiff; Defendant Mortgage Electronic Registration Systems, Inc's ("MERS") violations of Washington's Deed of Trust Act, violation of Washington's Consumer Protection Act, and intentional infliction of emotional distress upon the plaintiff; and Defendants Trans Nation Title Company's ("Trans Nation"), First American Title Insurance Company's ("First American"), and Executive Trustee Services, LLC's ("Executive Trustee") breach of fiduciary duty to the plaintiff, intentional infliction of emotional distress upon the plaintiff, violation of Washington's Deed of Trust Act, and violations of Washington's Consumer Protection Act.

In addition, Mrs. Moon brings this action to enjoin any foreclosure of her property because of the defendants' actions.

## II.    JURISDICTION AND PARTIES

2.1    At all relevant times, Plaintiff was and now is an individual of full age of majority, and currently resides in Soda Springs, Idaho.

2.2    Plaintiff is informed and believes, and based on such belief, alleges that Defendant GMAC Mortgage Corporation ("GMAC"), d.b.a. "Ditech.com" ("Ditech") is a

AMENDED COMPLAINT - 2



720 Olive Way, Suite 1000, Seattle, WA 98101-2509
p: 206.624.0123  f: 206.624.8598  www.resolvelegal.com

Pennsylvania-based corporation. The Court has jurisdiction over this defendant because GMAC is registered to do business in Washington state and GMAC/Ditech conducts extensive business in Washington.

2.3     Plaintiff is informed and believes, and based on such belief, alleges that Defendant Mortgage Electronic Registration Systems, Inc., a.k.a. "MERS" is a corporation organized and registered in Delaware state. The Court has jurisdiction over this Defendant because it conducts extensive business in Washington state.

2.4     Plaintiff is informed and believes, and based on such belief, alleges that Defendant Trans Nation Title Company is a company doing business in Washington. The Court has jurisdiction over this Defendant because it is named as trustee in a Deed of Trust over property located in Washington.

2.5     Plaintiff is informed and believes, and based on such belief, alleges that Defendant First American Title Insurance Company is a company registered to do business in Washington state. Thus, the Court has jurisdiction over this Defendant.

2.6     Plaintiff is informed and believes, and based on such belief, alleges that Defendant Executive Trustee, Inc., is a company registered to do business in California. The Court has jurisdiction over this Defendant because it is named as a trustee in a Notice of Trustee's Sale in Washington and regarding a Washington State property, and because it conducts business in Washington State.

2.7     Venue is proper in Snohomish County, Washington, because the subject property is located there.

AMENDED COMPLAINT - 3

**RESOLVE** LEGAL PLLC
A DEBT RELIEF AGENCY

720 Olive Way, Suite 1000, Seattle, WA 98101-2509
p: 206.624.0123  f: 206.624.8598  www.resolvelegal.com

### III.   FACTS

3.1     The plaintiff, Judith Moon is a 62-year old widow who has no children. Mrs. Moon's deceased husband is Jimmy Moon, who was 67 at the time of his passing. While Mr. Moon included Mrs. Moon in most family financial decisions, Mr. Moon was the primary wage-earner of the couple, earning almost 50% more per month than Mrs. Moon.  Prior to his sudden death, Mr. Moon managed most of the Moons' financial decisions.

3.2     The Moons lived together for many years at their residence located at 18101 Trombley Road, Snohomish, Washington, in Snohomish County.  The Moons purchased that residence in 1989.  The Snohomish residence is a modest house, roughly 800 square feet in size, and in fair condition.

3.3     After years of hard work, the Moons planned their retirement in Idaho. The Moons purchased a residence located in Soda Springs.  For only a short time prior to Mr. Moon's passing, the Moons owned both properties concurrently.

3.4     On or about December 22, 2005, the Moons took out a second mortgage for their residence in Snohomish County.  The Moons obtained that second mortgage with Ditech for about $40,000 at 6.9% interest.  At this time, the Moons had a first mortgage for about $134,000 from Chase Mortgage.  As a result of this second mortgage from Ditech, the Moons now owed a total of roughly $174,000 for their home.

3.5     The Moons paid 3% for the origination fee for this second mortgage, about $1,200.

AMENDED COMPLAINT - 4

**RESOLVE** LEGAL PLLC
A DEBT RELIEF AGENCY

720 Olive Way, Suite 1000, Seattle, WA 98101-2509
p: 206.624.0123  f: 206.624.8598  www.resolvelegal.com

3.6     On or about April 23, 2006, the Moons refinanced the two mortgages for their Snohomish residence, again with Ditech.  The Moons refinanced their mortgage over the phone after receiving a flyer from Ditech in the mail indicating that they would qualify for a low-interest loan due to their good credit.  The flyer, a true and accurate copy of which is attached here as **Exhibit A**, indicates that GMAC is "here to help you: Right now and down the road."

3.7     The Moons spoke with a Ditech phone operator by the name of Erik Jenner.  Erik obtained the Moons' financial information over the phone and prepared the loan application documents for the Moons in order to secure a loan with Ditech.

3.8     Mr. Jenner repeatedly informed the Moons that they could likely get "whatever [they] want[ed]" because of the comparable sales prices of some of the Moons' neighbors' houses.

3.9     The Moons obtained refinancing for roughly $225,000 for their Snohomish residence, by way of an "80/20" loan. An 80/20 loan means that 80% of the total loan amount was secured with a first mortgage, with the remaining 20% secured with a second mortgage.

3.10    Mr. Jenner informed the Moons that obtaining an 80/20 loan would spare them the cost of private mortgage insurance.

3.11    Unbeknownst to the Moons, as the lender for both the first and second mortgages, Ditech could foreclose on the first mortgage, but still pursue the Moons for any deficiency for the second mortgage.  Had the Moons obtained mortgage insurance,

AMENDED COMPLAINT - 5

**RESOLVE** LEGAL PLLC
A DEBT RELIEF AGENCY

720 Olive Way, Suite 1000, Seattle, WA 98101-2509
p: 206.624.0123  f: 206.624.8598  www.resolvelegal.com

they would have been safeguarded against Ditech's potential pursuit of the second mortgage loan.

3.12    Ditech knew, or should have known, that by promoting an "80/20" loan the Moons would still be vulnerable to the deficiency for the second mortgage in the event of a foreclosure on the first mortgage.

3.13    The Moons effectively took out the $180,000 refinance to pay off the prior first mortgage with Chase, plus the second mortgage with Ditech.  Due to the encouragement of Mr. Jenner, the Moons then took an additional second mortgage for $45,000, bringing the total amount borrowed to $225,000.

3.14    The Moons did not need to take the additional $45,000 second mortgage on April 23, 2006, since they could have simply kept the original second mortgage (taken out in December 2005).

3.15    The Moons did not meet with a Ditech representative in person prior to submitting their loan documents by mail.  The Moons received and submitted most of their loan documents by mail.

3.16    As such, the Moons borrowed about $180,000 for their first mortgage at 7% interest for 30 years.  Monthly payments would be roughly $1,198 per month.  The Moons borrowed the additional $45,000 for their second mortgage at 10.75% interest for 25 years.  Monthly payments would be roughly $433 per month for this loan.

3.17    The interest rate for the refinanced second mortgage was nearly four percent higher than the initial second mortgage.

AMENDED COMPLAINT - 6

**RESOLVE** LEGAL PLLC
A DEBT RELIEF AGENCY

720 Olive Way, Suite 1000, Seattle, WA 98101-2509
p: 206.624.0123  f: 206.624.8598  www.resolvelegal.com

3.18    Also, because the Moons refinanced their second mortgage within four months, the Moons effectively paid Ditech/GMAC $300 per month in origination fees for the initial second mortgage.  In effect, the Moons paid $300 per month for the use of the $40,000 they borrowed in December 2005.

3.19    Because the amount that the Moons received from the loan slightly exceeded the amount necessary to pay off their credit cards and car, the Moons used the remaining proceeds toward the new mortgage.

3.20    On or about April 23, 2006, a loan closing was conducted at a Denny's restaurant in Monroe, Washington.  The Moons did not select the individual who closed the loan; Ditech selected this individual to close the loan.

3.21    Aside from the house appraiser with whom Mr. Moon met alone, at no time did any other Ditech representative personally meet with either of the Moons.

3.22    The Moons did not receive the correct and/or correct number of copies of the closing documents at the closing at Denny's, including the HUD-1 or Truth-in-Lending disclosures.

3.23    The Deed of Trust for the refinance lists the following entities as potential parties: (A) The Moons as the borrowers; (B) GMAC Mortgage as the lender; (C) Trans Nation Title Company as the trustee; and (D) MERS as the "nominee" and beneficiary.

3.24    On or about August 9, 2007, Jimmy Moon was at the Idaho residence doing yard work in preparation for the eventual sale of the Snohomish residence and the

AMENDED COMPLAINT - 7

**RESOLVE** LEGAL PLLC
A DEBT RELIEF AGENCY

720 Olive Way, Suite 1000, Seattle, WA 98101-2509
p: 206.624.0123  f: 206.624.8598  www.resolvelegal.com

Moons' retirement when he suffered a massive heart attack and died suddenly in his front yard.  Mrs. Moon was in Snohomish at the time.

3.25    Mrs. Moon was devastated by the loss of her life partner and sole companion.

3.26    Mrs. Moon lost not only her husband of 42 years, but also the key financial decision-maker and wage-earner.  Despite such a devastating loss, Mrs. Moon promptly contacted various creditors to explain her circumstances, assess the amount(s) owed, and seek a workout for any delinquencies in payment.

3.27    Until Mr. Moon's sudden death, the Moons had made their payments to creditors in a timely fashion.  The Moons had never missed or made any untimely mortgage payments.

3.28    Within days of her husband's death, Mrs. Moon called Ditech on at least two occasions.  After several minutes on hold, Mrs. Moon explained the circumstances of her husband's death.

3.29    The Ditech operator was wholly uncooperative.

3.30    Following her unsuccessful attempts to work out a deal with the uncooperative Ditech operators, Mrs. Moon retained Resolve Legal, PLLC ("Resolve Legal") to represent her interests pertaining to her loans.

3.31    On or about September 7, 2007, Mrs. Moon sent a qualified written request, pursuant to the Real Estate Settlement Procedures Act ("RESPA") to Ditech requesting complete copies of all the "loan documents, including copies of any Note,

AMENDED COMPLAINT - 8

Deed of Trust, application, good faith estimate, TILA disclosure forms, settlement statement, correspondence, appraisal, and any other documents or copies of documents" pertaining to the two loans referenced above.  That letter also authorized Ditech to speak to Mrs. Moon's newly retained attorneys at Resolve Legal.  A copy of that letter is attached as **Exhibit B**.

3.32    Ditech did not respond to Mrs. Moon's qualified written request.

3.33    In or about December 2007, Ditech sent Mrs. Moon a letter indicating her default on the mortgage.

3.34    Shelly Crocker, an attorney with Resolve Legal, contacted Ditech to speak with a loss mitigation specialist to explain Mrs. Moon's circumstances and to attempt to negotiate payment of the mortgage.

3.35    Ms. Crocker sent a letter, dated January 1, 2008, to Ditech repeating Resolve Legal's representation of Mrs. Moon.  Ms. Crocker repeated that Mrs. Moon had sent a qualified written request to Ditech that had gone unanswered.  Ms. Crocker again requested complete copies of all the loan documents and emphasized that in lieu of responding to the request for loan documents, per statutory mandate, Ditech had sent a notice of default to Mrs. Moon.  Attached as **Exhibit C** is a true and accurate copy of that letter.

3.36    Again, Ditech was unwilling to engage in meaningful dialogue to work with Mrs. Moon and her circumstances.

3.37    On January 14, 2008, Lakisha Johnson, a Ditech representative from the

**AMENDED** COMPLAINT - 9

"Voice of the Customer" department, informed Ms. Crocker that she would need to submit a third-party authorization provided by Ditech, signed and notarized, before any Ditech agent would be able to speak about Mrs. Moon's account.  Despite Mrs. Moon's earlier written authorization on behalf of Ms. Crocker, Mrs. Moon submitted yet another requested authorization.

3.38    Ditech did not respond to the requests for the loan documents until March 3, 2008, almost 40 days after the third request for the loan documents, and almost 180 days after Mrs. Moon's first request.

3.39    On March 3, 2008, Ditech (through its representative, Lakisha Johnson) sent its entire loan file to Resolve Legal, in response to Mrs. Moon's and Resolve Legal's numerous requests for all loan documents.  Missing from those documents were several documents required under TILA, indicating either that Ditech failed to provide the proper notices under the TILA, or again failed to respond to Mrs. Moon's qualified written requests.

3.40    To date, Mrs. Moon still has no copy of the "HUD-1" form, various TILA disclosures, or any appointment of a successor trustee.

3.41    Throughout this prolonged delay, Ditech sent notices of default and foreclosure.  At this time, Mrs. Moon's sole income was a meager social security benefit from her husband's passing.  Her bills were adding up and her delinquencies increasing despite her best efforts to ameliorate her plight.

AMENDED COMPLAINT - 10

**RESOLVE** LEGAL PLLC
A DEBT RELIEF AGENCY

720 Olive Way, Suite 1000, Seattle, WA 98101-2509
p: 206.624.0123  f: 206.624.8598  www.resolvelegal.com

3.42    On or about February 25, 2008, Mrs. Moon received a Notice of Foreclosure on her first mortgage with GMAC because of alleged delinquencies.  Mrs. Moon also received a Notice of Trustee's Sale to foreclose on her Snohomish property. A true and accurate copy of that Notice is attached here as **Exhibit D.**

3.43    The Sale was set for May 30, 2008.  The trustee sale number is WA-128540-C.  The Notice of Trustee's Sale indicated that First American Title Company, the undersigned Trustee, would sell the Snohomish property pursuant to the Deed of Trust that named

TRANS NATION TITLE COMPANY, as Trustee, to secure an obligation in favor of "MERS" MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., SOLELY AS NOMINEE FOR LENDER GMAC MORTGAGE CORPORATION DBA DITECH.COM, as Beneficiary, the beneficial interest in which was assigned by "MERS" MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., SOLELY AS NOMINEE FOR LENDER GMAC MORTGAGE CORPORATION DBA DITECH.COM to MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC.. [sic]

3.44    The Notice of Trustee's Sale was signed by "Anna Liza Guingao" of First American Title Insurance Company, whose office was listed as being located in Seattle, Washington.  Ms. Guingao's signature was notarized by Mike Sproule, who indicated that Ms. Guingao personally appeared before him.

AMENDED COMPLAINT - 11

**R E S O L V E** LEGAL PLLC
A DEBT RELIEF AGENCY

720 Olive Way, Suite 1000, Seattle, WA 98101-2509
p: 206.624.0123  f: 206.624.8598  www.resolvelegal.com

3.45    The Notices also did not show any assignment or appointment that Executive Trustee had the authority to foreclose or sell the Snohomish property or act as trustee, as defined by Washington's Deed of Trust Act.

3.46    The Notices also did not show any assignment or appointment that First American Title Company, or First American Title Insurance Company had the authority to foreclose or sell the Snohomish property.

3.47    The Notice of Trustee's Sale indicates a single phone number as a contact for the borrower – (714) 259-7850 - which is a California-based number that is listed as a "sale line" immediately below First American's address.  When dialed, this number connects to an automated message with information about the trustee's sale.

3.48    Mrs. Moon and her attorneys repeatedly attempted to contact Ditech and the named trustees overseeing the trustee's sale.  An attorney at Resolve Legal, Zeshan Khan, called Ditech and the named trustees on nearly a dozen occasions.  Each time, Mr. Khan was put on hold for 20-45 minutes.

3.49    Despite Resolve Legal having sent authorizations and releases on four different occasions, during each call GMAC/Ditech representatives told Mr. Khan that they did not have any documentation on file authorizing either Mr. Khan or Ms. Crocker to discuss Mrs. Moon's file.

3.50    On two occasions, Ditech operators gave Mr. Khan erroneous contact information for a department or individual who could help Mrs. Moon.

AMENDED COMPLAINT - 12

**RESOLVE** LEGAL PLLC
A DEBT RELIEF AGENCY

720 Olive Way, Suite 1000, Seattle, WA 98101-2509
p: 206.624.0123  f: 206.624.8598  www.resolvelegal.com

3.51    A Ditech operator informed Mr. Khan that the named trustee was the only entity that could help Mrs. Moon postpone the foreclosure sale scheduled for May 30, 2008.  When Mr. Khan contacted the trustee by the number provided by Ditech, the trustee representative, "Toni," informed him that he had been misled; only Ditech had the authority to postpone the sale.

3.52    Despite Mrs. Moon's and her attorneys' repeated attempts to contact Ditech to arrange some type of workout, Ditech was either unresponsive or unsympathetic to Mrs. Moon's circumstances.  Ditech's callous treatment of Mrs. Moon caused her extreme stress leading to an eventual breakdown, requiring medical attention and leave from work.  Among Ditech's actions were: (1) failure to provide requested documentation, as required by law; (2) repeated failures to document telephone calls or requests by Mrs. Moon or her attorney(s); and (3) callous attitude during telephone calls and correspondence (or lack thereof) toward a recently laid-off 62-year old widow.  Each of these acts greatly stressed Mrs. Moon both emotionally and physically.

3.53    On May 27, 2008, Resolve Legal obtained a temporary restraining order enjoining the May 30th trustee's sale on Mrs. Moon's property.  Resolve Legal properly served each of the parties with a copy of the order enjoining the sale.

3.54    Because Resolve Legal did not receive a response from any of the parties, Mr. Khan, travelled to the Snohomish County Courthouse in Everett, Washington, on May 30th.  Despite a court order having been entered and properly served, Mrs. Moon's property was still listed for sale on that day's auction sheet.  Mr. Khan immediately

AMENDED COMPLAINT - 13

**RESOLVE** LEGAL PLLC
A DEBT RELIEF AGENCY

720 Olive Way, Suite 1000, Seattle, WA 98101-2509
p: 206.624.0123  f: 206.624.8598  www.resolvelegal.com

notified the auctioneer of the restraining order and had the sale postponed.  Had Mr.

Khan not driven to the auction that day, Mrs. Moon's property would have been sold.

3.55    Soon after, the law firm of Bishop, White & Marshall entered an

appearance on behalf of all the named defendants except Trans Nation.

## IV.    FIRST CAUSE OF ACTION:  GMAC'S BREACH OF FIDUCIARY DUTY

4.1    Plaintiff incorporates the above allegations and statements by reference.

4.2    GMAC established a fiduciary or quasi-fiduciary duty with the Moons by

soliciting the Moons' business with a flyer sent to the Moons assuring them that GMAC

was "here to help [them]: Right now and down the road."

4.3    In addition, GMAC, through its agent Erik Jenner, solicited and

intentionally induced the trust, confidence and reliance of the Moons.  GMAC had

superior knowledge regarding the consequences of the April 2006 refinance over the

unsophisticated Moons, and the Moons relied on GMAC's advice, just as GMAC knew

or should have known they would.  The position of trust, confidence, and reliance that

Mr. Jenner and GMAC occupied as the Moons' broker created fiduciary or quasi-

fiduciary duties owed by GMAC to the Moons.

4.4    GMAC breached that fiduciary or quasi-fiduciary duty to the Moons by:

(a)    failing to aid Mrs. Moon after her husband suddenly died and her

household income collapsed;

(b)    talking the Moons into an "80/20" loan that would eliminate the

Moons' security by having mortgage insurance;

AMENDED COMPLAINT - 14



720 Olive Way, Suite 1000, Seattle, WA 98101-2509
p: 206.624.0123  f: 206.624.8598  www.resolvelegal.com

(c)     talking the Moons into obtaining a loan that: (1) would

simultaneously preserve GMAC's ability to foreclose on the first mortgage, but

preserve GMAC's ability to sue the Moons for the debt on the second mortgage

and (2) the Moons did not need, and charged them a far higher interest rate for the

April 2006 second mortgage than they were being charged for the December 2005

second mortgage; and

(d)     constructively refusing to cooperate with her attorneys' efforts at a

resolution to this matter.

4.5     Mrs. Moon incurred damages as a result of GMAC's breach of its

fiduciary or quasi-fiduciary duty.

4.6     These damages were a proximate result of GMAC's breach of its fiduciary

or quasi-fiduciary duty.

## V.     SECOND CAUSE OF ACTION:  TRANS NATION'S, FIRST AMERICAN'S AND EXECUTIVE TRUSTEE'S BREACH(ES) OF FIDUCIARY DUTY

5.1     A trustee has a fiduciary duty toward the Moons, pursuant to *Cox v.*

*Helenius*, 103 Wn.2d 383 (1985).

5.2     By informing Mr. Khan that only GMAC/Ditech had the authority to

postpone the foreclosure sale, the alleged trustee(s) breached this duty.

5.4     Each of these three parties breached their individual duties by failing to

provide a meaningful contact information to prevent the trustee's sale.

AMENDED COMPLAINT - 15

5.5     Trans Nation, First American, and Executive Trustee breached their respective fiduciary duties by failing to enjoin the May 30th trustee's sale, despite receiving a court order enjoining the sale.

5.6     Mrs. Moon suffered damages as a result of Trans Nation's, First American's, and Executive Trustee's respective breaches of fiduciary duties, including, but not limited to, attorneys' fees and costs.

5.7     Mrs. Moon's damages were a proximate result of Trans Nation's, First American's, and Executive Trustee's respective breaches of fiduciary duties.

## VI.     THIRD CAUSE OF ACTION: VIOLATION(S) OF TRUTH IN LENDING ACT (15 U.S.C. § 1601 *ET SEQ.*)

6.1     Plaintiff incorporates the above allegations and statements by reference.

6.2     Mrs. Moon did not receive documents and disclosures from GMAC, as required under the Truth in Lending Act, and is, therefore, entitled to damages and/or rescission rights that are revealed through a review of documents to be obtained through discovery.

6.3     Because GMAC's TILA violations are defensive in nature to enjoin foreclosure, no statute of limitations exists.

## VII.    FOURTH CAUSE OF ACTION: VIOLATION(S) OF DEEDS OF TRUST ACT (RCW 61.24)

7.1     Plaintiff incorporates the above allegations and statements by reference.

7.2     RCW 61.24 defines a "beneficiary" as "the holder of the instrument or document evidencing the obligations secured by the deed of trust."  Defendant MERS

AMENDED COMPLAINT - 16

**RESOLVE** LEGAL PLLC
A DEBT RELIEF AGENCY

720 Olive Way, Suite 1000, Seattle, WA 98101-2509
p: 206.624.0123  f: 206.624.8598  www.resolvelegal.com

cannot demonstrate that it is the beneficiary as defined by statute, and as such, lacks the authority to assign any of its alleged interests to the subject property.

7.3     Defendant First American is not authorized to act on behalf of the lender or any entity that was a party to the subject Deed of Trust.  As such, First American Title Insurance Company lacks the right to foreclose the subject property pursuant to RCW 61.24.

7.4     Defendant Executive Trustee is not authorized to act on behalf of the lender or any entity that was a party to the subject Deed of Trust.  As such, Executive Trustee lacks the right to foreclose the subject property pursuant to RCW 61.24, or act as a trustee under this statute.

7.5     The failure of either of these parties to demonstrate their standing to foreclose on the subject property warrants injunctive relief preventing the foreclosure.

**VIII.   FIFTH CAUSE OF ACTION: VIOLATION(S) OF REAL ESTATE SETTLEMENT PROCEDURES ACT ("RESPA") (12 U.S.C. § 2605 *ET SEQ.*)**

8.1     Plaintiff incorporates the above allegations and statements by reference.

8.2     Under RESPA, a written inquiry triggers obligations upon a servicer of a loan.  GMAC failed to acknowledge Ms. Moon's or her attorneys' requests within 20 days of receipt, in violation of RESPA.

8.3     In addition, GMAC failed to provide the information requested in Mrs. Moon's September 7, 2007, qualified written request within 60 days, as required in RESPA.

AMENDED COMPLAINT - 17

**RESOLVE** LEGAL PLLC
A DEBT RELIEF AGENCY

720 Olive Way, Suite 1000, Seattle, WA 98101-2509
p: 206.624.0123  f: 206.624.8598  www.resolvelegal.com

8.4     GMAC's failures enumerated in paragraphs No. (the above paragraphs) constitute a violation of RESPA for which Mrs. Moon is entitled to damages, in the amount of $1,000 per occurrence, plus any additional remedies this court finds equitable.

8.5     GMAC's failures warrant injunctive relief against the foreclosure.

8.6     Due to GMAC's violations of RESPA, Mrs. Moon has incurred extensive attorneys' fees for which she is entitled to compensation.

## IX.     SIXTH CAUSE OF ACTION: VIOLATION(S) OF CONSUMER PROTECTION ACT (RCW 19.86)

9.1     Plaintiff incorporates the above allegations and statements by reference.

9.2     Neither MERS nor First American has a right to foreclose on the subject property, since MERS is not a beneficiary as defined in Washington's Deed of Trust Act, and since it lacks the power to appoint First American as a successor trustee.

9.3     In addition, the defendants breached their fiduciary duties to Mrs. Moon, as described above.

9.4     The defendants' acts constitute unfair and deceptive practices that occur in their trade or commerce.

9.5     The defendants' actions have a public impact and, as a proximate cause of these actions, Mrs. Moon has directly sustained considerable damages.

9.6     As provided by *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 719 P.2d 531(1986), Ms. Moon is entitled to recover damages for the defendants' violation(s) of the Consumer Protection Act, including treble damages and attorney's fees.

**AMENDED** COMPLAINT - 18

**RESOLVE** LEGAL PLLC
A DEBT RELIEF AGENCY

720 Olive Way, Suite 1000, Seattle, WA 98101-2509
p: 206.624.0123  f: 206.624.8598  www.resolvelegal.com

## X.      SEVENTH CAUSE OF ACTION: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

10.1    Plaintiff incorporates the above allegations and statements by reference.

10.2    GMAC's callous attitude and clear unwillingness to work with Mrs. Moon after her husband's untimely death caused Mrs. Moon significant emotional distress. Mrs. Moon suffered and continues to suffer from emotional distress as a result of GMAC's poor treatment of her during this difficult time.  This distress was manifested by depression, sadness, frustration, and anger, which required medical treatment and time away from work.

10.3    Trans Nation's, First American's, and Executive Trustees' attempts to foreclose on Mrs. Moon's property without giving her a meaningful opportunity to prevent the trustee's sale greatly contributed to Mrs. Moon's distress.

10.4    Mrs. Moon is entitled to compensation due to the poor treatment she received from the named defendants and their reckless and/or intentional infliction of emotional distress upon her.

## XI.     EIGHT CAUSE OF ACTION: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

11.1    Plaintiff incorporates the above allegations and statements by reference.

11.2    In the alternative, the alleged defendants' conduct as set out above in paragraphs 10.1 through 10.4 was negligent insofar as the defendants failed to take reasonable care to avoid causing Mrs. Moon, a recently widowed 62-year old woman, emotional distress and caused plaintiff emotional distress.

AMENDED COMPLAINT - 19

**RESOLVE** LEGAL PLLC
A DEBT RELIEF AGENCY

720 Olive Way, Suite 1000, Seattle, WA 98101-2509
p: 206.624.0123  f: 206.624.8598  www.resolvelegal.com

11.3    The plaintiff's emotional distress was manifested by depression, sadness, frustration, anger, and other medical conditions that have required medical treatment and time away from work.

11.4    Mrs. Moon is entitled to compensation because of the poor treatment that she received from the named defendants and their negligent infliction of emotional distress upon her.

## XII.    NINTH CAUSE OF ACTION: MISREPRESENTATION BY TRUSTEE

12.1    Plaintiff incorporates the above allegations and statements by reference.

12.2    By misinforming Mrs. Moon and her attorneys that only GMAC/Ditech had the authority to postpone the foreclosure sale, the alleged trustees made a representation which is not in accord with the true facts.

12.3    The information provided by the alleged trustees was material because reliance on such facts could have resulted in the wrongful foreclosure sale of Mrs. Moon's house.

12.4    Mrs. Moon relied on the information and she was justified in her reliance because of the fiduciary relationship between herself and the alleged trustees.

12.5    Mrs. Moon is entitled to be compensated for the damages that she suffered as a result of the alleged trustees' conduct.

## XIII.   UNCONSCIONABILITY

13.1    Plaintiff incorporates the above allegations and statements by reference.

AMENDED COMPLAINT - 20

13.2    GMAC induced the Moons to enter into a refinance for both the first and second mortgages.

13.3    This act was a misrepresentation of a material fact because: the Moons did not need the new second mortgage, GMAC charged the Moons a significantly higher interest rate, and GMAC misinformed the Moons of the risk of an 80/20 loan.

13.4    The April 23, 2006, second mortgage was unconscionable for these above reasons.

13.5    Mrs. Moon is entitled to rescind the second mortgage based on the unconscionability of this loan.

## XIV.   RELIEF REQUESTED

Plaintiff request the following relief:

14.1    For judgment against Defendants GMAC Mortgage Corporation, Mortgage Electronic Registration Systems, Inc., First American Title Insurance Company, Executive Trustee, Inc., and Trans Nation Title Company in an amount to be determined at trial;

14.2    For judgment against Defendants GMAC Mortgage Corporation, Mortgage Electronic Registration Systems, Inc., First American Title Insurance Company, Executive Trustee, Inc., and Trans Nation Title Company for post-judgment interest at the maximum legal rate;

14.3    For judgment against Defendants GMAC Mortgage Corporation, Mortgage Electronic Registration Systems, Inc., First American Title Insurance

**AMENDED** COMPLAINT - 21

**RESOLVE** LEGAL PLLC
A DEBT RELIEF AGENCY

720 Olive Way, Suite 1000, Seattle, WA 98101-2509
p: 206.624.0123  f: 206.624.8598  www.resolvelegal.com

Company, Executive Trustee, Inc., and Trans Nation Title Company for Plaintiff's reasonable attorneys fees and costs incurred as a consequence of Defendants' improper actions;

14.4    That the actions of the defendants be declared  unfair and deceptive business practices in violation of Washington's Consumer Protection Act, and that this Court award all such relief to Mrs. Moon as she may be entitled to under the Consumer Protection Act, including treble damages and an award of costs and attorneys' fees;

14.5    That the defendants be temporarily and permanently enjoined from selling and/or encumbering the sale of the subject property; and

14.6    Such other further relief as is just and equitable under the circumstances of this case.

DATED this 27th day of June 2008,

Respectfully submitted,

RESOLVE LEGAL PLLC


By____/s/ Zeshan Q. Khan_____
       Shelly Crocker, WSBA #21232
       Zeshan Q. Khan, WSBA #30130
Attorneys for Plaintiff

AMENDED COMPLAINT - 22

**R E S O L V E** LEGAL PLLC
A DEBT RELIEF AGENCY

720 Olive Way, Suite 1000, Seattle, WA 98101-2509
p: 206.624.0123  f: 206.624.8598  www.resolvelegal.com