UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JUDITH MOON, an individual,

               Plaintiff,

v.

GMAC MORTGAGE CORPORATION, d/b/a DITECH.COM, a Pennsylvania Corporation, et al.,

               Defendants.

C08-969Z

ORDER

THIS MATTER comes before the Court on cross-motions for summary judgment. Having reviewed all papers filed in support of and in opposition to each motion, the Court hereby ORDERS:

(1) Defendants' motion for summary judgment, docket no. 76, is GRANTED IN PART and DENIED IN PART;

(2) Plaintiff's motion for partial summary judgment against defendant GMAC Mortgage Corporation d/b/a ditech.com ("GMAC"), docket no. 83, is GRANTED IN PART and DENIED IN PART;

(3) Plaintiff's motion for partial summary judgment against defendant First American Title Insurance Company ("FATIC"), docket no. 84, is DENIED;

ORDER - 1

(4) Plaintiff's motion for partial summary judgment against defendant Executive Trustee Services, LLC ("ETS"), docket no. 85, is DENIED;

(5) With the exception of plaintiff's Fifth Cause of Action under the Real Estate Settlement Procedures Act and plaintiff's Sixth Cause of Action as against only GMAC, plaintiff's claims are DISMISSED with prejudice, but plaintiff will be permitted to assert any violations of the Truth in Lending Act as defenses to defendant GMAC's counterclaim; and

(6) Defendants Mortgage Electronic Registration Systems, Inc., First American Title Insurance Company, and Executive Trustee Services, LLC, are DISMISSED from this action with prejudice.

## Background

This action involves two loans that Jimmy Moon and plaintiff Judith Moon obtained from GMAC in April 2006 to refinance their Snohomish residence. One of the loans was for 80% and the other loan was for 20% of the estimated value of the home. The "80/20" loans were for the following amounts, durations, and interest rates:

- $180,000 for 30 years at 7% per annum
- $45,000 for 25 years at 10.75% per annum.

On August 9, 2007, plaintiff's husband, Jimmy Moon, died. The sequence of the events that followed is the focus of many of plaintiff's claims, and it is therefore presented in chronological rather than narrative form.

| | |
|---|---|
| September 7, 2007 | Plaintiff sends a letter to GMAC requesting "complete copies of all our loan documents," complaining that she "tried to contact someone at ditech.com several times to inform you that my husband passed away unexpectedly last month, but have not received any return call or correspondence," and advising that she had retained an attorney who was authorized to speak with GMAC on her behalf. Exh. C to Stines Decl. (docket no. 77). |
| November 2007 | Plaintiff is laid off. |
| January 1, 2008 | Plaintiff's attorney sends a letter to GMAC requesting "complete copies of all the loan documents." Exh. 6 to Davis Decl. (docket no. 86). |

ORDER - 2

| | | |
|---|---|---|
| January 24, 2008 | Plaintiff's attorney sends a letter to GMAC requesting "complete copies of all the loan documents." Exh. 7 to Davis Decl. (docket no. 86). | |
| March 3, 2008 | Homecomings Financial, LLC, a GMAC company, sends plaintiff's attorney "the requested documentation." Exh. 8 to Davis Decl. (docket no. 86). | |
| March 17, 2008 | GMAC sends plaintiff (and her deceased husband) a letter offering to accept $11,122.39 as full payment on the second ($45,000) mortgage. Exh. H to Zeitz Decl. (docket no. 78). | |
| May 23, 2008 | Plaintiff files suit in Snohomish County Superior Court against GMAC, as well as Mortgage Electronic Registration System, Inc. ("MERS"), Transnation Title Co., and FATIC.[1] Exh. A to Notice of Removal (docket no. 1). | |
| May 27, 2008 | Snohomish County Superior Court issues a temporary restraining order enjoining the Trustee's sale scheduled for May 30, 2008. Exh. C to Khan Decl. (docket no. 88). | |
| May 30, 2008 | Plaintiff's attorney Zeshan Khan drives to Snohomish County Superior Court and sees that plaintiff's property is still listed for sale at auction. Khan Decl. at ¶¶ 5-6 (docket no. 88). | |
| June 20, 2008 | Plaintiff's Snohomish County Superior Court case is removed to this Court. Notice of Removal (docket no. 1). | |
| June 27, 2008 | Plaintiff names ETS[2] as an additional defendant. Amended Complaint (docket no. 3). | |
| October 24, 2008 | Injunction against foreclosure is dissolved due to plaintiff's failure to make monthly payments into the Court's Registry. Order (docket no. 46). | |
| May 15, 2009 | Trustee sells the property for $207,435.29. Exh. 16 to Davis Decl. (docket no. 86). | |
| June 11, 2009 | Trustee's Deed is recorded with Snohomish County. *Id.* | |

---

[1] MERS is the beneficiary of the deeds of trusts executed by plaintiff and her husband in connection with the loans from GMAC. Exhs. C & D to Zeitz Decl. (docket no. 78). Transnation Title Co. was the trustee named in the deeds of trust, but it was removed as trustee in January 2008, and plaintiff's claims against Transnation Title Co. were dismissed in May 2009 pursuant to a stipulation of the parties. Stip. & Order (docket no. 60). FATIC is Transnation Title Co.'s successor as trustee for the deeds of trust at issue. Exh. A to De La Torre Decl. (docket no. 80).

[2] ETS acted as FATIC's agent for purposes of foreclosure proceedings. De La Torre Decl. at ¶ 3 (docket no. 80).

ORDER - 3

# Discussion

Plaintiff makes three types of claims: (1) federal statutory claims, (2) state statutory claims, and (3) state tort claims. Defendants move for summary judgment as to all of plaintiff's claims. Plaintiff moves for partial summary judgment as to liability in three separate motions, one aimed at GMAC, one concerning FATIC, and one regarding ETS.

## A. Summary Judgment Standard

The Court should grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When a properly supported motion for summary judgment has been presented, the adverse party "may not rely merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e). Rather, the non-moving party must set forth "specific facts" demonstrating the existence of a genuine issue for trial. *Id.*; *Anderson*, 477 U.S. at 256. All "justifiable inferences" are to be drawn in favor of the non-moving party. *Anderson*, 477 U.S. at 255. When the record, however, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, summary judgment is warranted. *See Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006).

## B. Federal Statutory Claims

### 1. Violation of Truth in Lending Act ("TILA") (Third Cause of Action)

Plaintiff alleges that she did not receive from GMAC the documents and/or disclosures required by TILA. Amended Complaint at ¶ 6.2 (docket no. 3). Defendants have moved for summary judgment on this claim on the ground that it is barred by a one-year statute of limitations. Plaintiff has not provided much response to this argument, but she did

ORDER - 4

assert in her Amended Complaint that the statute of limitations does not apply because the "TILA violations are defensive in nature to enjoin foreclosure." *Id.* at ¶ 6.3.

The provision of TILA at issue provides in relevant part:

> Any action under this section may be brought in any United States district court . . . within one year from the date of the occurrence of the violation. This subsection does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law.

15 U.S.C. § 1640(e). Thus, the statute differentiates between affirmative claims, which must be brought within one year, and defensive assertions of TILA violations, which carry no time limit. *See* Roach v. Option One Mortgage Corp., 598 F. Supp. 2d 741, 757 (E.D. Va. 2009) ("§ 1640(e) recognizes the fundamental difference between a borrower's initiation of a lawsuit by filing of a claim, which must occur within one year, and the defensive assertion of a TILA violation in an action brought by a TILA creditor, which a borrower may make at any time in *response* to the creditor seeking payment of the debt" (emphasis in original)).

The closing of the loans at issue occurred in April 2006. Plaintiff did not file suit until over two years later, in May 2008. Plaintiff offers no argument that the TILA violations took place any later than April 2006, or that she could not have discovered the violations until a time within one year before she filed suit. Thus, the one-year statute of limitations bars plaintiff's affirmative claim. It does not, however, preclude plaintiff from asserting any TILA violation as a defense to defendants' counterclaim. Defendants' motion for summary judgment is GRANTED IN PART and plaintiff's Third Cause of Action is DISMISSED.[3]

---

[3] By Minute Order dated August 24, 2009, docket no. 126, the Court denied plaintiff's motion to quash defendants' counterclaim, but gave plaintiff ten days to file an answer. Plaintiff's answer was filed on September 3, 2009, and asserted that "the amount of liability owed to Defendants should be offset . . . by the damages to which Ms. Moon is entitled based upon the Court's findings regarding the claims addressed in her Complaint." Answer to Counterclaim, Affirmative Defenses at ¶ 5 (docket no. 135). The dismissal of plaintiff's Third Cause of Action is without prejudice to plaintiff's ability to maintain the same TILA claim as an affirmative defense.

ORDER - 5

## 2. Violation of Real Estate Settlement Procedures Act ("RESPA") (Fifth Cause of Action)

Plaintiff alleges that GMAC did not timely acknowledge or respond to her requests for copies of loan documents. Defendants assert that plaintiff's and her attorney's letters did not constitute "qualified written requests" and therefore did not trigger the statutory deadlines for acknowledgement or response. Defendants also argue that they timely responded to the attorney's letters sent in January 2008. Finally, defendants contend that plaintiff has not established a pattern of noncompliance.

The provisions of RESPA at issue provide in relevant part:

> (1) Notice of receipt of inquiry
>
> (A) In general
>
> If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days . . . unless the action requested is taken within such period.
>
> (B) Qualified written request
>
> For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that --
>
> > (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
> >
> > (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.
>
> (2) Action with respect to inquiry
>
> Not later than 60 days . . . after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before

ORDER - 6

>                   taking any action with respect to the inquiry of the borrower, the
>                   servicer shall --
>
>                   . . . .
>
>                           (C)     after conducting an investigation, provide the borrower
>                                   with a written explanation or clarification that includes --
>
>                                   (i)     information requested by the borrower or an
>                                           explanation of why the information requested is
>                                           unavailable or cannot be obtained by the servicer;
>                                           and
>
>                                   (ii)    the name and telephone number of an individual
>                                           employed by, or the office or department of, the
>                                           servicer who can provide assistance to the
>                                           borrower.

12 U.S.C. § 2605(e)(1)(A), (e)(1)(B)(i)&(ii), & (e)(2)(C)(i)&(ii). An individual prevailing on a claim that the above-quoted provisions of RESPA were violated is entitled to:

> (A)     any actual damages to the borrower as a result of the failure; and
>
> (B)     any additional damages, as the court may allow, in the case of a pattern
>         or practice of noncompliance with the requirements of this section, in an
>         amount not to exceed $1,000.

12 U.S.C. § 2605(f)(1)(A)&(B).

Defendants' contention that none of the three letters at issue constitute a qualified written request ("QWR") lacks merit. Defendants assert that plaintiff's letter dated September 7, 2007, is not a QWR because it is unsigned and does not state that the account is in error. Neither a signature nor an accusation of error, however, are requirements of a QWR. A QWR need only ask for information relating to servicing and provide the relevant names and account numbers. The September letter appears to do both. It requests copies of loan documents and contains the names of the borrowers and account numbers at issue. *See* Exh. C to Stines Decl. (docket no. 77-4 at 3). Thus, the September letter constitutes a QWR to which GMAC failed to timely respond. *See In re Thorian*, 387 B.R. 50, 70 (Bankr. D. Idaho 2008) (interpreting the terms "inquiry" and "request" as used in RESPA to mean "a 'request for information'" and "the 'act or instance of asking for something,'" respectively,

and concluding that a QWR must "allege an account error or seek some information from the loan servicer").

The two letters sent in January 2008 by plaintiff's attorney likewise qualify as QWRs. Defendants' assertion that the letters are not QWRs because they do not bear plaintiff's signature or are not accompanied by an authorization form containing plaintiff's and her husband's social security numbers runs contrary to the statutory definition of a QWR. RESPA specifically envisions that a QWR may be sent by a borrower's agent. <u>See</u> 12 U.S.C. § 2605(e)(1)(A). Both letters at issue indicate that the author, Shelly Crocker, had been retained by plaintiff to represent her. Both letters identify the borrowers and the account numbers. Both letters request copies of loan documents. <u>See</u> Exh. C to Stines Decl. (docket no. 77-4 at 4-6). Both letters are QWRs.

Defendants appear to concede that they never acknowledged receipt of the three letters at issue, which they were required to do within 20 days of receiving the correspondence. They assert, however, that they complied with the request for documents within 60 days of receiving the January letters from plaintiff's attorney. Defendants appear to be correct, the first letter being dated January 1, 2008, the documents having been produced on March 3, 2008, and all intervening holidays and weekends being excluded, pursuant to RESPA, from calculation of the 60-day period. <u>See</u> 12 U.S.C. § 2605(e)(2). Moreover, defendants' faxed response contains the requisite name and telephone number of an employee who could provide further assistance. <u>See</u> Exh. 8 to Davis Decl. (docket no. 86).

Thus, GMAC's RESPA violations consist of: (1) failing to acknowledge receipt of three QWRs within the applicable 20-day (effectively 4 work-week) period; and (2) failing to timely respond to plaintiff's September request for documents. Defendants contend that, despite such violations, plaintiff's RESPA claim should be dismissed because she has failed

to establish actual damages or a pattern of noncompliance.  These arguments, however, do not warrant judgment as a matter of law.

In response to defendants' assertion that plaintiff has not shown actual damages, plaintiff contends that "most courts" have held that actual damages under RESPA include emotional distress.  Response at 15 (docket no. 103).  Defendants have offered no reply on this issue, and plaintiff appears to be correct.  Although two courts have concluded that RESPA does not permit recovery of emotional distress damages, other courts that "have examined § 2605(f) have consistently found that 'actual damages' includes emotional distress damages."  *Carter v. Countrywide Home Loans, Inc.*, 2009 WL 1010851 at *3 (E.D. Va.) (disagreeing with *Katz v. Dime Sav. Bank*, 992 F. Supp. 250 (W.D.N.Y. 1997), and *In re Tomasevic*, 273 B.R. 682 (Bankr. M.D. Fla. 2002)); *Ploog v. Homeside Lending, Inc.*, 209 F. Supp. 2d 863, 870 (N.D. Ill. 2002) (holding that "RESPA is a consumer protection statute and RESPA's actual damages provision includes recovery for emotional distress").  The *Carter* and *Ploog* decisions are well-reasoned and the Court likewise HOLDS that RESPA permits recovery of emotional distress damages.  Whether plaintiff can adequately quantify her alleged emotional distress, however, is an issue for the trier of fact, and not an appropriate subject for summary judgment.  *See Carter*, 2009 WL 1010851 at *5 ("such evidence as that concerning emotional distress is, by its very nature, not necessarily susceptible to precise quantification and, therefore, the Court declines to preclude, as a matter of law, the ultimate fact finder's consideration of such evidence at trial").

As to defendants' denial of a pattern or practice of noncompliance with RESPA, plaintiff has established a genuine issue of material fact precluding summary judgment.  The Court concludes that three successive failures to timely acknowledge receipt and a failure to timely respond to a request for loan documents might well constitute a pattern or practice of noncompliance, but defendants' explanation for such conduct might weigh against such finding, and the Court cannot decide this issue as a matter of law.  The Court declines to

ORDER - 9

address whether, if such pattern or practice were established, it would exercise its discretion to permit statutory damages in any amount, either equal to or below the limit of $1,000.

In sum, defendants' motion for summary judgment as to plaintiff's Fifth Cause of Action is DENIED, and plaintiff's motion for partial summary judgment as to GMAC's violation of RESPA is GRANTED IN PART. The three letters sent by plaintiff or her attorney constitute QWRs, and GMAC failed to timely acknowledge receipt of the letters. GMAC also failed to timely respond to plaintiff's letter dated September 7, 2007. Actual damages for purposes of RESPA encompass emotional distress, but whether plaintiff can adequately quantify any emotional distress damages and whether plaintiff would receive any statutory damages based on any pattern or practice of noncompliance are issues reserved for trial.

**C.     State Statutory Claims**

   **1.     Violation of Deeds of Trust Act
            (Fourth Cause of Action)**

The contours of plaintiff's claim under the Deeds of Trust Act are unclear. In her Amended Complaint, plaintiff alleged that MERS "cannot demonstrate that it is the beneficiary [of the deeds of trust] as defined by statute," that FATIC "is not authorized to act on behalf of the lender or any entity that was a party to the subject Deed of Trust," and that ETS "is not authorized to act on behalf of the lender or any entity that was a party to the subject Deed of Trust." Amended Complaint at ¶¶ 7.2-7.4 (docket no. 3). Defendants, however, have provided copies of the Deeds of Trust, naming MERS as the beneficiary, and a copy of an Appointment of Successor Trustee, which was recorded in Snohomish County, indicating that FATIC had been appointed trustee by MERS, as successor to Transnation Title Co. Exhs. C & D to Zeitz Decl. (docket nos. 78-4 & 78-5); Exh. A to De La Torre Decl. (docket no. 80-2).

In response to defendants' motion, plaintiff has not offered any evidence disputing MERS's status as beneficiary or FATIC's status as trustee, and has not cited any authority

ORDER - 10

undermining ETS's status or authority to act as FATIC's agent for purposes of foreclosure proceedings. *See* <u>Buse v. First Am. Title Ins. Co.</u>, 2009 WL 1543994 (W.D. Wash.) (holding that, although the Deeds of Trust Act limits who may serve as a trustee of a deed of trust, it does not restrict who may act as a trustee's agent, and that the Deeds of Trust Act explicitly allows trustees to use agents). Instead, in response to defendant's motion, plaintiff has attempted to alter the nature of her Deeds of Trust Act claim, and now contends that FATIC and ETS violated the statute and/or their fiduciary duties by representing to plaintiff that they could not stop or postpone the trustee's sale. Plaintiff, however, cannot in her briefing change the fundamental character of her pleadings. Moreover, plaintiff points to no specific provision of the Deeds of Trust Act that she alleges FATIC and/or ETS violated, and the current rendition of her statutory claim appears duplicative of her separately pleaded claim against FATIC and ETS for breach of fiduciary duty, as well as of her claim against FATIC for misrepresentation. Thus, defendants' motion for summary judgment is GRANTED IN PART and plaintiff's Fourth Cause of Action is DISMISSED with prejudice.

**2. Violation of Consumer Protection Act ("CPA")**
**(Sixth Cause of Action)**

To establish a violation of the CPA, plaintiff must prove (i) defendants engaged in an unfair or deceptive act or practice; (ii) such act or practice occurred within a trade or business; (iii) such act or practice affected the public interest; (iv) plaintiff suffered an injury to her business or property; and (v) a causal relationship exists between defendants' act or practice and plaintiff's injury. *See* <u>Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.</u>, 105 Wn.2d 778, 785-93, 719 P.2d 531 (1986). In her Amended Complaint, plaintiff pleaded her CPA claim in conclusory fashion, merely reciting the elements of a CPA claim, and failing to identify with particularity any unfair or deceptive trade practice in which defendants have allegedly engaged. *See* Amended Complaint at ¶¶ 9.2-9.6 (docket no. 3). Based on the deficiency of plaintiff's pleading, defendants have moved for summary judgment.

ORDER - 11

In response, plaintiff contends that GMAC's unfair or deceptive practices consisted of violations of RESPA's disclosure and QWR requirements. *See* *Brazier v. Sec. Pac. Mortgage Inc.*, 245 F. Supp. 2d 1136, 1142 (W.D. Wash. 2003) (holding that failure to make timely disclosures as required by federal statutes such as TILA and RESPA constitutes an unfair or deceptive act or practice for purposes of Washington's CPA). Plaintiff alleges that GMAC failed to provide a HUD-1 settlement statement at closing as required by RESPA. Plaintiff, however, did not plead in her Amended Complaint any RESPA or CPA claim predicated on nondisclosure of a HUD-1. Indeed, plaintiff acknowledges that she has no private right of action or remedy for such RESPA violation, and that she seeks to use this RESPA violation only as evidence of an unfair practice in connection with her CPA claim. Plaintiff cannot do so, though, because she waited too long to give notice of the HUD-1 claim. Discovery closed a month before defendants filed the pending motion for summary judgment, and defendants would be prejudiced if plaintiff were now allowed to proceed on the previously undisclosed theory that GMAC violated the CPA by not complying with RESPA's HUD-1 provisions.

In contrast, plaintiff did plead a RESPA claim based on violation of the QWR response requirements, and plaintiff explicitly incorporated the allegations of that cause of action into her CPA claim. *See* Amended Complaint at ¶ 9.1 (docket no. 3). In their briefing on the pending motions, however, the parties did not fully address whether failures to acknowledge or respond to QWRs constitute either per se unfair or deceptive trade practices or trade practices that are unfair or deceptive because they have the "capacity to deceive a substantial portion of the public." *See* *Hangman Ridge*, 105 Wn.2d at 785-86, 719 P.2d 531 (1986); *see also* *Panag v. Farmers Ins. Co.*, 166 Wn.2d 27, 37 n.3, 204 P.3d 885 (2009). The parties are directed to discuss this issue, as well as the other elements of a CPA claim, in their trial briefs, which are currently due on November 23, 2009.

As to her CPA claim against FATIC and ETS, plaintiff alleges that FATIC's and ETS's unfair or deceptive practices consisted of making misrepresentations concerning their authority (or lack thereof) to stop or postpone the trustee's sale. Plaintiff, however, has failed to explain how such representations were unfair or deceptive, how they affected the public interest, or how they caused any injury to plaintiff's property. Thus, plaintiff has not presented sufficient evidence or analysis to demonstrate the existence of an issue for trial concerning her CPA claim against FATIC and ETS. Defendants' motion for summary judgment is GRANTED IN PART, and plaintiff's Sixth Cause of Action against FATIC and ETS is DISMISSED with prejudice. Plaintiff may proceed to trial on her Sixth Cause of Action against GMAC, but her claim is limited to any violations of the QWR provisions of RESPA, and it may not be predicated on the alleged failure to provide a HUD-1 statement.

**D.     State Tort Claims**

Defendants raise three types of defenses to plaintiff's tort claims. First, defendants contend that plaintiff's failure to pay amounts due into the Court's Registry, as a result of which the Court dissolved the preliminary injunction and permitted foreclosure, constituted a waiver of all of plaintiff's claims. Second, defendants assert that the economic loss rule bars plaintiff's infliction of emotional distress and unconscionability claims. Third, defendants challenge whether plaintiff has put forward sufficient proof of her claims. These arguments will be addressed seriatim.

**1.     Waiver**

Washington courts have held that a borrower or grantor of a deed of trust who fails to employ the procedures of the Deeds of Trust Act to enjoin a foreclosure or trustee's sale waives the right to contest the underlying obligations on the foreclosed property.[4] *Plein v.*

---

[4] The legislature recently modified the waiver doctrine to exempt claims of fraud, misrepresentation, CPA violations, and failure to comply with the Deeds of Trust Act, thereby permitting such claims to be brought within the earlier of two years after a foreclosure sale or the applicable statute of limitations even when the borrower or grantor failed to seek an injunction of the foreclosure sale. *See* 2009 Wash. Legis. Serv. Ch. 292, § 6 (S.B. No. 5810) (codified at RCW 61.24.180). The effective date of this amendment was

ORDER - 13

*Lackey*, 149 Wn.2d 214, 67 P.3d 1061 (2003); *Brown v. Household Realty Corp.*, 146 Wn. App. 157, 189 P.3d 233 (2008); *CHD, Inc. v. Boyles*, 138 Wn. App. 131, 157 P.3d 415 (2007). These decisions are based on the following three goals of the Deeds of Trust Act: (i) to promote an efficient and inexpensive nonjudicial foreclosure process; (ii) to ensure an adequate opportunity for interested parties to prevent wrongful foreclosure; and (iii) to secure the stability of land titles. *Brown*, 146 Wn. App. at 169. Although the waiver doctrine bars claims that contest the underlying debt or obligation, it does not preclude a borrower or grantor from challenging, in a post-sale action, the procedures of the foreclosure or trustee's sale. *CHD*, 138 Wn. App. at 139. Thus, the task before the Court is to determine the nature of plaintiff's claims, which will indicate whether they have been waived.

As pleaded, plaintiff's claims against GMAC for breach of fiduciary duty, intentional and negligent infliction of emotional distress, and unconscionability involve the underlying obligation, not the foreclosure procedures. In the First Cause of Action, plaintiff asserts that GMAC breached a fiduciary duty by "talking the Moons into an '80/20' loan" and failing to aid or cooperate with plaintiff after her husband died. Amended Complaint at ¶ 4.4 (docket no. 3). In the Seventh and Eighth Causes of Action, plaintiff alleges that GMAC Mortgage Corp.'s callous attitude and unwillingness to work with her following her husband's death caused her emotional distress. *Id.* at ¶¶ 10.2 & 11.2. In the last, unnumbered claim, which the Court will denominate the Tenth Cause of Action, plaintiff contends that the second mortgage was unconscionable due to *inter alia* its "significantly higher" rate. *Id.* at ¶¶ 13.3-13.4. All of these claims seek relief from the underlying obligation, and plaintiff is deemed

---

July 26, 2009, which was after the foreclosure sale at issue in this case and after the Trustee's Deed was recorded. The new statute contains no indication that it has any retroactive effect. Moreover, the amendment does not appear to apply; it governs only "foreclosures of owner-occupied residential real property," RCW 61.24.180(3), and at the time the property at issue was foreclosed, plaintiff no longer resided in it, but rather had moved to Idaho.

ORDER - 14

to have waived them by failing to take the steps necessary to maintain the injunction against foreclosure.[5]

In contrast, plaintiff's claims against FATIC and ETS for breach of fiduciary duty, infliction of emotional distress, and misrepresentation predominately relate to the foreclosure process. In essence, plaintiff alleges that FATIC and/or ETS made misrepresentations concerning their authority to postpone the foreclosure and failed to adequately comply with the Snohomish County Superior Court's order enjoining foreclosure. These claims fall outside the scope of the waiver doctrine. Defendants' motion for summary judgment on the basis of waiver is therefore GRANTED IN PART as to GMAC and DENIED IN PART as to FATIC and ETS. Plaintiff's First, Seventh, Eighth, and Tenth Causes of Action against GMAC are deemed waived and are DISMISSED with prejudice.

### 2. Economic Loss Rule

Defendants assert that the economic loss rule precludes plaintiff's claims against FATIC and ETS for intentional and negligent infliction of emotional distress. The economic loss rule limits parties to their contractual remedies when a loss potentially implicates both tort and contract relief. <u>Alejandre v. Bull</u>, 159 Wn.2d 674, 682, 153 P.3d 864 (2007). The rule bars recovery for alleged breach of tort duties when a contractual relationship between the parties exists and the losses at issue are purely economic. <u>Id.</u> at 683. Plaintiff, however,

---

[5] Plaintiff asserts that waiver does not apply because she obtained an injunction, which was later dissolved, citing for support a comment written by a law student in 1984, which opined that "a party who unsuccessfully attempted to enjoin the sale should not be held to have waived the right to contest the completed sale." Joseph L. Hoffmann, Comment, *Court Actions Contesting the Nonjudicial Foreclosure of Deeds of Trust in Washington*, 59 Wash. L. Rev. 323, 336 (1984). No Washington court has yet adopted this student's view, but even were it a valid proposition, lack of success in initially obtaining an injunction differs substantially from the situation here, where plaintiff "fail[ed] to show that she made a good faith effort to comply with the conditions of the injunction" and failed to "explain why she has not or cannot make partial monthly payments." Order at 7 (docket no. 46). In essence, plaintiff allowed the injunction to lapse, and waiver of her claims challenging the underlying obligation is the corollary to such behavior. <u>See Brown</u>, 146 Wn. App. at 169 ("To except tort or other claims for money damages from the waiver provision would frustrate the purposes of the Act because lenders understandably may not be willing to utilize a non-judicial foreclosure procedure in which the trustee's sale bars any deficiency judgment but leaves the lender subject to potential liability arising out of the underlying obligation even after the property securing the deed of trust has been sold.").

ORDER - 15

did not have a contractual relationship with either FATIC or ETS, and defendants' motion for summary judgment based on the economic loss rule as to the Seventh and Eighth Causes of Action against FATIC and ETS is DENIED.

### 3. **Sufficiency**

As to the four remaining claims against FATIC and ETS, namely breach of fiduciary duty, intentional and negligent infliction of emotional distress, and misrepresentation, the Court must assess whether plaintiff has presented sufficient evidence to demonstrate an issue for trial. All four claims involve the same factual allegations, namely that FATIC and/or ETS told plaintiff's attorney they had no authority to postpone the foreclosure sale and that FATIC and/or ETS did not take the actions necessary to postpone the sale after the Snohomish County Superior Court issued an injunction. The parties appear to agree that a trustee of a deed of trust owes fiduciary duties to both the mortgagee/beneficiary and the mortgagor/grantor. <u>Cox v. Helenius</u>, 103 Wn.2d 383, 389, 693 P.2d 683 (1985). The parties dispute, however, whether FATIC or ETS breached any duties, made any misrepresentations, or did anything improper that caused plaintiff emotional distress.

In support of her claims, plaintiff offers ETS's file notes indicating that Myron Ravelo, a Default Team Lead with ETS, spoke with plaintiff's attorney, Shelly Crocker, on May 22, 2008, and advised her that ETS "do[es] not have the authority to make any payment arrangements nor postpone the sale without the consent of the lender GMAC." Exh. 10 to Davis Decl. (docket no. 86); <u>see also</u> Ravelo Decl. at ¶¶ 1 & 6 (docket no.79). Plaintiff also submits a declaration of her former attorney, Zeshan Khan, who indicates that, on May 27, 2008, he obtained an order restraining the trustee's sale, which he served on Transnation Title Insurance Co. (which was no longer the trustee on the date in question), and that, on May 30, 2008, he drove to the Snohomish County Courthouse and saw plaintiff's property still listed for auction. Khan Decl. at ¶¶ 4 and 5 (docket no. 88). Mr. Khan further states that

ORDER - 16

he presented the restraining order to the auctioneer and "stopped the sale from taking place." *Id.* at ¶ 6.

Defendants contend that the listing of plaintiff's property on the auctioneer's sheet is not evidence of FATIC's or ETS's failure to comply with the restraining order, but rather is consistent with one of the provisions of the Deeds of Trust Act, which states:

> The trustee has no obligation to, but may, for any cause the trustee deems advantageous, *continue the sale* for a period or periods not exceeding a total of one hundred twenty days *by* (a) *a public proclamation at the time and place fixed for sale in the notice of sale* and if the continuance is beyond the date of sale, by giving notice of the new time and place of the sale by both first class and either certified or registered mail, return receipt requested, to the persons specified in subsection (1)(b)(i) and (ii) of this section . . . .

RCW 61.24.040(6) (emphasis added). Defendants assert that plaintiff's property remained on the auctioneer's sheet because the trustee was required to publicly announce at the time stated in the notice of sale that the sale was being continued. Plaintiff provides no authority or evidence to the contrary, and defendants' position appears consistent with the Deeds of Trust Act, to the extent the trustee (FATIC via its agent ETS) chose to continue the sale in the manner set forth in RCW 61.24.040(6). *See* RCW 61.24.130(6) ("The issuance of a restraining order or injunction shall not prohibit the trustee from continuing the sale as provided in RCW 61.24.040(6)."). Thus, plaintiff has not put forward sufficient evidence to demonstrate that the listing of plaintiff's property on the auctioneer's sheet constituted a breach of FATIC's and/or ETS's fiduciary duties, and plaintiff's infliction of emotional distress claims relating to this allegation are likewise lacking in merit.

As to the statements by Mr. Ravelo indicating to plaintiff's attorney that FATIC and/or ETS had no authority to "make any payment arrangements nor postpone the sale without the consent of the lender GMAC," plaintiff fails to explain how such representation was inaccurate, misleading, or a breach of fiduciary duty. The only case cited by plaintiff is *Cox v. Helenius*, 103 Wn.2d 383, 693 P.2d 683 (1985), which is distinguishable. In *Cox*, the plaintiffs, a husband and wife, purchased a swimming pool for their home in Seattle. To

ORDER - 17

secure payment for the pool, they executed a deed of trust for their home, naming the attorney for the pool contractor as trustee. Shortly after the work was completed, the pipes installed by the pool contractor collapsed, causing sewage to back up into the home. The pool contractor failed to repair the work and the plaintiffs spent additional funds to fix the problem. The plaintiffs' attorney sent a letter to the pool contractor demanding that it reconvey the deed of trust and pay for the damage resulting from its defective work. The plaintiffs withheld payments on the note secured by the deed of trust. The trustee sent the plaintiffs notice of default. The plaintiffs then filed suit. The trustee appeared in the action as attorney of record for the pool contractor. He subsequently gave notice of and conducted a foreclosure sale, at which his secretary bid $11,783 on behalf of the pool contractor, and the winning bidder, a then-disbarred attorney, paid one dollar more. At the time of the sale, the home was worth between $200,000 and $300,000.

In *Cox*, the Supreme Court held that the trustee had violated his fiduciary duty to the plaintiffs by failing to either (i) inform them that their lawsuit did not itself operate to restrain the trustee's sale or (ii) delay the foreclosure until the plaintiff's action against the pool contractor was resolved. *Id.* at 390. Moreover, the trustee should not have also acted as the pool contractor's attorney. *Id.* Although the trustee in *Cox* was admonished by the Supreme Court for not delaying the foreclosure sale, the conclusion does not follow that all trustees of all deeds of trust have authority to postpone a foreclosure sale without the consent of the beneficiary. The key fact distinguishing *Cox* from this case, as well as from the garden-variety foreclosure situation, is the trustee's position as both the trustee of the deed of trust and the attorney of record for the beneficiary in an action in which the obligation secured by the deed of trust was being challenged. Because the trustee was also the attorney for the beneficiary, he presumably had authority to delay the foreclosure sale, not in his capacity as trustee, but as the representative of the beneficiary. *Cox* simply does not support plaintiff's contention that FATIC or ETS breached any fiduciary duty or made any misrepresentation

when Mr. Ravelo informed plaintiff's attorney that, without GMAC's consent, neither FATIC nor ETS could cancel the sale and, as a result, her claims for breach of fiduciary duty, intentional or negligent infliction of emotional distress, and misrepresentation fail. Defendants' motion for summary judgment is GRANTED IN PART, and plaintiff's Second, Seventh, Eighth, and Ninth Causes of Action against FATIC and/or ETS are DISMISSED with prejudice.

**Conclusion**

For the foregoing reasons, defendants' motion for summary judgment, docket no. 76, is GRANTED IN PART and DENIED IN PART, plaintiff's motion for summary judgment against GMAC, docket no. 83, is GRANTED IN PART and DENIED IN PART, and plaintiff's motions for summary judgment against the remaining defendants, docket nos. 84 and 85, are DENIED.

IT IS SO ORDERED.

DATED this 2nd day of October, 2009.

Thomas S. Zilly
United States District Judge